IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

REX ALLEN BECKWORTH,　　　)
　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　)
　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　)　　　CASE NO. 1:16-CV-225-WKW-WC
　　　　　　　　　　　　　　)
JEFFERSON DUNN, Commissioner, )　　**CAPITAL CASE**
　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　)

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Petitioner Rex Allen Beckworth, a death-sentenced inmate in the custody of the Alabama Department of Corrections, filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging the legality of his conviction for the capital murder of Bessie Thewatt in January of 2000. Beckworth was convicted in September of 2002. (Doc. # 1.) He asserts claims of trial court error, *Brady* violations by the prosecution, and claims of ineffective assistance of counsel, both in the guilt and penalty phases of trial.

This matter is before the court on Beckworth's Motion for an *Atkins* Hearing (Doc. # 22) and his Motion for Discovery of *Brady* Evidence (Doc. # 23). After these motions had been fully briefed, they were heard on January 17, 2017. Beckworth's motions are due to be denied without prejudice.

A.      **Motion for *Atkins* Hearing**

This motion is based on *Atkins v. Virginia*, 536 U. S. 304 (2002), which held that the execution of mentally retarded criminals was "cruel and unusual punishment" prohibited by the Eighth Amendment.   Post-*Atkins*, one who is intellectually disabled cannot be executed.  Beckworth claims that he is intellectually disabled and was not afforded a fair opportunity to present evidence of his intellectual disability at trial; therefore, he submits that he is entitled to an *Atkins* hearing in federal court.  Beckworth seeks to present additional evidence of his intellectual disability in this action that was not presented to the state court.

*Atkins* was decided in June 2002, nearly three months before Beckworth's trial in September 2002.  Beckworth raised an *Atkins* claim before trial, moved to dismiss the capital indictment against him, and requested a pretrial hearing and ruling on the *Atkins* claim.  The trial court denied the motions to dismiss and for a pretrial hearing of the *Atkins* claim, electing to submit the *Atkins* claim to the jury post-trial at sentencing.  Both parties presented evidence relative to Beckworth's *Atkins* claim at the sentencing hearing.  The trial court submitted a form to the jury to determine whether Beckworth was mentally retarded and instructed the jury that its decision on the intellectual disability issue had to be unanimous.  Beckworth contends that

the trial court committed constitutional error by not considering the *Atkins* claim until the sentencing hearing.

*Atkins* recognized that "mentally retarded defendants in the aggregate face a special risk of wrongful execution" because they may be less able to give meaningful assistance to their counsel and are typically poor witnesses. *Atkins*, 536 U. S. at 320-21. The *Atkins* Court also pointed out that "reliance on mental retardation as a mitigating factor can be a two-edged sword that may enhance the likelihood that the aggravating factor of future dangerousness will be found by the jury." *Id.*

Arguably, the take-away from *Atkins* is that the intellectual disability issue should be resolved prior to trial rather than at a sentencing hearing. However, the *Atkins* Court left the matter to the states to develop appropriate procedures for the presentation and resolution of intellectual disability claims. *Atkins*, 536 U. S. at 317. Given that *Atkins* was decided on the eve of Beckworth's trial, no procedures had been established in Alabama for considering *Atkins* claims prior to Beckworth's trial. Thus, the trial court had no road map and was left on its own to fashion a procedure for considering Beckworth's *Atkins* claim. The Alabama courts have since established procedures to be followed in Alabama cases dealing with *Atkins* claims. *See Ex parte Perkins*, 851 So. 2d 453 (Ala. 2002), *Smith v. State*, No. 1060427, 2007 WL 1519869 at *13 (Ala. 2007) ("Generally, an *Atkins* claim should be raised and

addressed by the trial judge in a pretrial hearing without a jury.")  However, these procedures were not in place at the time of Beckworth's trial.

When Beckworth first raised his *Atkins* claim before trial, he argued that in keeping with *Atkins* and *Ring v. Arizona*, 536 U.S. 584, (2002), a jury must determine whether he was mentally retarded.  Beckworth also requested that this determination be made pre-trial.  As previously stated, the trial court deferred consideration of the *Atkins* claim until the sentencing hearing and submitted a special interrogatory to the jury during the penalty-phase deliberations to decide whether Beckworth was mentally retarded.  The trial court instructed the jury on the definition of "mental retardation" as the American Association for Mental Retardation (AAMR) defined it.  The Supreme Court in *Atkins* quoted the AAMR's definition of mental retardation.  The judge stated that he thought it was the safest course of action to take, and the parties agreed.  *Beckworth v. State*, 946 So. 2d 490, 509 n.6 (Ala. Crim. App. 2005).  The jury determined that Beckworth was not mentally retarded.

In considering Beckworth's *Atkins* claim on appeal, the Alabama Court of Criminal Appeals (ACCA) acknowledged that Beckworth scored below 70 on one of the IQ tests, but that on the other IQ test, he scored 73. The State's expert testified that the IQ test on which Beckworth scored 73 "was a more reliable indicator of

Beckworth's intelligence." *Beckworth*, 946 So. 2d at 510.  In the final analysis, the ACCA concluded, "because there was evidence that supported a determination that Beckworth did not demonstrate significantly subaverage general intellectual functioning, we can determine that Beckworth, even under the broadest definition of mental retardation, is not mentally disabled." *Id.*  The ACCA also reviewed the procedure employed by the trial court to consider Beckworth's *Atkins* claim and found no fault with it, stating:  "We note that nothing in Alabama or federal law requires that this procedure be followed, but we note that the able trial court acted out of an abundance of caution while attempting to comply with the dictates of a newly announced rule of law."  *Id.*  The ACCA affirmed the denial of his *Atkins* claim.

Beckworth asserts that he is entitled to an evidentiary hearing in this action on his *Atkins* claim for two different reasons:  (1) the trial court committed constitutional error by not considering his *Atkins* claim before trial, and (2) the ACCA's rejection of his *Atkins* claim on direct appeal contravened *Atkins* by employing a strict IQ score cutoff of 70 and the ACCA's conclusion that he is not mentally retarded is an unreasonable determination of the facts, similar to what happened to the defendants in *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), *Burgess v.*

*Commissioner*, 723 F. 3d 1308 (11th Cir. 2013), and *Smith v. Campbell*, 620 F. App'x 734 (11th Cir. 2015).

### 1.    Trial court's procedure for handling the *Atkins* claim

Beckworth submits that he received the same inadequate process as Brumfield, Burgess, and Smith did in their respective cases.  Beckworth asserts that in each of those cases, evidence of intellectual disability was presented at sentencing, rather than pretrial.  Beckworth points out that the appellate courts in *Brumfield*, *Burgess*, and *Smith* reversed the denial of *Atkins* relief because the evidence of intellectual disability was presented at sentencing.  Beckworth notes that the Supreme Court and Alabama courts have recognized that an *Atkins* claim is a separate issue from the guilt and sentencing phases of trial.  Therefore, it should have been considered separately pre-trial and that by waiting until sentencing to consider his *Atkins* claim, the trial court unfairly and erroneously combined or merged his *Atkins* claim with the determination of guilt and punishment.  For these reasons, Beckworth contends that he is entitled to an *Atkins* hearing in federal court.

### a.    *Brumfield v. Cain*

Brumfield was convicted of murder in a Louisiana court and sentenced to death prior to *Atkins*.  Post-*Atkins*, the Louisiana Supreme Court determined that an evidentiary hearing is required when a defendant "provide[s] objective factors"

sufficient to raise a "a reasonable ground" to believe that he has an intellectual disability, which the court defined as "(1) subaverage intelligence, as measured by objective standardized IQ tests; (2) significant impairment in several areas of adaptive skills; and (3) manifestations of this neuro-psychological disorder in the developmental stage." *State v. Williams*, 831 So. 2d 835, 857, 861, 854 (La. 2002). Post-*Williams*, Brumfield amended his state post-conviction petition to raise an *Atkins* claim. Seeking an evidentiary hearing, he pointed to evidence introduced at sentencing that he had an IQ of 75, had a fourth-grade reading level, had been prescribed numerous medications and treated at psychiatric hospitals as a child, had been identified as having a learning disability, and had been placed in special education classes. The trial court dismissed Brumfield's petition without holding a hearing or granting funds to conduct additional investigation.

Brumfield subsequently sought federal habeas relief. The district court found that the state court's rejection of Brumfield's claim was both "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by" this Court and "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The court went on to determine that Brumfield was intellectually disabled. The Fifth Circuit found that Brumfield's petition failed to satisfy either of

§ 2254(d)'s requirements and reversed.  The Supreme Court granted certiorari and reversed, holding that because Brumfield satisfied § 2254(d)(2)'s requirements, he was entitled to have his *Atkins* claim considered on the merits in federal court. *Brumfield*, 135 S. Ct. at 2276-2283.

### b.    *Burgess v. Commissioner*

Burgess was convicted of capital murder on March 1, 1994, for the murders of his girlfriend and two of her children.  His conviction and sentence were affirmed on direct appeal.  *See Burgess v. State*, 723 So. 2d 742 (Ala. Crim. App.1997), *aff'd*, 723 So.2d 770 (Ala. 1998), *cert. denied*, 526 U.S. 1052 (1999).

Subsequently, Burgess sought post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 in March 2000, arguing, *inter alia*, that his trial counsel was ineffective for failing to investigate adequately and present evidence regarding his mental health.  During the penalty phase of Burgess's trial, the defense introduced some evidence regarding Burgess's mental health as part of its theory of mitigation, focusing on his mental disorder and the history of mental illness in his family.  While Burgess's Rule 32 petition was pending, the Supreme Court granted *certiorari* in *Atkins*.  Shortly thereafter, Burgess then sought to amend the petition to reference the Eighth Amendment claim that he could not be executed because he was mentally retarded.  He also requested funds to retain a mental health expert and

asked that mental health experts be granted access to him to conduct examinations. The state trial court denied both requests, and held no the Eighth Amendment claim, as the Alabama trial court found that claim to be procedurally defaulted. *Burgess v. State*, 962 So. 2d 272, 298 (Ala.Crim.App. 2005). Thus, the state trial court never considered the substance of Burgess's Eighth Amendment *Atkins* claim.

The Alabama Court of Criminal Appeals (ACCA) reversed the trial court ruling on procedural default recognizing that "the decision in *Atkins* . . . applies retroactively to cases that are on collateral review." *Burgess*, 962 So. 2d at 299 (quoting *Clemons v. State*, 55 So.3d 314, 319 (Ala. Crim. App. 2003)). However, the ACCA rejected Burgess's argument that "now that *Atkins* has declared unconstitutional the execution of the mentally retarded," he should be permitted to develop "the record on [his] mental retardation." Burgess also claimed that even though the trial record indicated that he was mentally retarded, he was "prevented from adequately developing these claims during his Rule 32 hearing by the [trial c]ourt's denial of his ex parte applications for funds for expert assistance" and the denial of his motion for experts to obtain access to him in the prison, "which prevented him from utilizing any expert that could have been procured independently of state funds."

The ACCA denied Burgess's Eighth Amendment claim on the merits, based solely on the state court record from pre-*Atkins* proceedings, and concluded that he was not mentally retarded. *Id.* The Supreme Court of Alabama, to whom Burgess also argued he should be allowed to develop the record on his mental retardation claim, denied review. *Ex parte Burgess*, No. # 1050290, 4 So.3d 588 (Ala. Crim. App. Feb. 23, 2007).

Burgess then filed a habeas petition in federal court pursuant to 28 U.S.C. § 2254. The district court rejected, without conducting an evidentiary hearing, Burgess's claim that he is mentally retarded. The district court also rejected Burgess's claim that his trial counsel was ineffective in investigating, preparing for, and presenting mitigating circumstances related to his mental health in the penalty phase of his trial. On appeal, the Eleventh Circuit reversed the district court's ruling as to Burgess's *Atkins* claim and remanded for an evidentiary hearing on the *Atkins* claim. *Burgess v. Commissioner*, 723 F.3d 1308 (11th Cir. 2013). The Eleventh Circuit also determined that the ACCA erroneously determined that Burgess was not intellectually disabled based only upon the record before the state court. *Id.* at 1315-1319.

**c.   *Smith v. Campbell***

In September of 1998, Smith was convicted of the capital murder of Durk Van Dam.  As part of his penalty-phase defense, Smith presented evidence to establish mitigating circumstances, including a report from a clinical psychologist who had diagnosed him with major depression, post-traumatic stress disorder, alcohol dependence, learning disorder, anti-social personality, and borderline intellectual functioning.  The jury returned an advisory verdict recommending a death sentence. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Smith to death.

On direct appeal, Smith's conviction and death sentence were affirmed.  In 2002, Smith then filed a post-conviction Rule 32 petition in state court.  It was dismissed as untimely, but the Alabama Supreme Court reversed and remanded, holding that it was timely filed.  *Ex Parte Joseph Clifton Smith*, 891 So. 2d 286 (Ala. 2004).  In 2002, Smith filed an amended Rule 32 petition alleging that he was intellectually disabled.  Smith requested an evidentiary hearing.  In 2005, the trial court found that Smith was not mentally retarded, rejected his *Atkins* claim without an evidentiary hearing, and dismissed the Rule 32 petition.  On appeal, the ACCA affirmed, and the Alabama Supreme Court denied Smith's petition for a writ of certiorari.  620 F. App'x at 743-44.

Smith then sought relief in a § 2254 federal habeas petition, claiming that the ACCA's decision rejecting his *Atkins* claim was both an unreasonable application of clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), and an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d)(2).  In September 2013, the district court denied Smith's habeas petition without discovery or an evidentiary hearing.  *Smith v. Thomas*, No. CIV.A.05-0474-CG-M, 2013 WL 5446032, at *38 (S.D. Ala. Sept. 30, 2013).  However, the district court granted Smith a Certificate of Appealability.

On appeal, the Eleventh Circuit concluded that the ACCA's finding that there was "no indication that Smith had significant defects in adaptive behavior," *Smith II*, 71 So.3d at 20, was based on an unreasonable determination of the facts.  620 F. App'x at 751.  The Eleventh Circuit reversed and remanded for consideration of Smith's request for discovery and an evidentiary hearing since Smith's trial preceded *Atkins*.

Thus, Beckworth's reliance on *Brumfield, Burgess*, and *Smith* to support his claim for an *Atkins* hearing is misplaced.  These cases are distinguishable because (1) they preceded the *Atkins* decision, (2) the *Atkins* claims were not raised pre-trial and were first raised in state post-conviction proceedings, and (3) the petitioners were denied evidentiary hearings on their *Atkins* claims in post-trial proceedings.

By contrast, Beckworth's *Atkins* claim was raised before trial and was considered post-trial during Beckworth's sentencing hearing.  Beckworth presented evidence to support his *Atkins* claim at the sentencing hearing.  Thus, his case does not fit the mold of the *Brumfield, Burgess*, and *Smith* cases.

## 2.    The ACCA's rejection of the *Atkins* claim on direct appeal

Beckworth contends that in rejecting his *Atkins* claim on direct appeal, the ACCA contravened *Atkins* by employing a strict IQ score cutoff of 70,[1] a "rigid rule [] creat[ing] an unacceptable risk that persons with intellectual disability will be executed."[2]  Beckworth submits that despite evidence from both sentencing experts demonstrating that he had adaptive deficits, including prior to age 18, the ACCA found that he "did not suffer from significant deficits in adaptive behavior" and "there was no evidence that any of the alleged deficits manifested themselves before Beckworth was 18 years old."[3]  Beckworth asserts that as in *Brumfield*, *Burgess*, and *Smith*, the ACCA's conclusion that he was not intellectually disabled was an

---

[1]  *Beckworth*, 946 So. 2d at 510 ("[A]lthough Beckworth's score on one of the intelligence tests given by the defense expert indicated that Beckworth's IQ was below 70, the other test administered by the defense expert, the one which the State's expert testified was a more reliable indicator of Beckworth's intelligence, indicated that Beckworth's IQ was 73. . . . [B]ecause there was evidence that supported a determination that Beckworth did not demonstrate significantly subaverage general intellectual functioning, we can determine that Beckworth, even under the broadest definition of mental retardation, is not mentally retarded.").

[2] *Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014).

[3] *Beckworth*, 946 So. 2d at 510.

unreasonable determination of the facts. Beckworth submits that based on the ACCA's unreasonable determination of the facts, plus the substantial evidence he presented at sentencing to establish his intellectual disability claim, he is entitled to an evidentiary hearing in this court so he can establish his entitlement to *Atkins* relief.

In response, Respondent counters that based on a comprehensive review of the testimony presented at the *Atkins* hearing in state court and in the August 26, 2005, opinion of the ACCA, *Beckworth v. State*, 946 So. 2d at 498-501, 507-510, the jury (in a unanimous decision), the trial court, and the ACCA properly rejected Beckworth's *Atkins* claim. Therefore, he is not entitled to an evidentiary hearing in this court because he was given a full and fair hearing on his *Atkins* claim in state court.

As this court explained at the hearing on January 17, with this motion, Beckworth has placed the cart before the horse. His motion for an *Atkins* hearing is premature because this court has yet to make a finding that the state court's rejection of Beckworth's *Atkins* claim was either "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). *See Cullen v. Pinholster*, 563 U.S. 170, 181

(2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *id.* at 185 ("evidence introduced in federal court ahs no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court."); *id.* at n.7 (recognizing that review of the reasonableness of a state court's factual determinations under § 2254(d)(2) is also rendered "in light of the evience presented in the State court proceeding").[4]

In fact, this case is not yet in a posture for the court to make that determination, as no Scheduling Order establishing a timeframe for the briefing of Beckworth's claims on the merits has been entered in this case. Routinely, the court enters such an order following a scheduling/case management conference with the parties. At the scheduling/case management conference the undersigned conducted with counsel on October 18, 2016, the court was prepared to enter a Scheduling Order following that conference, but Beckworth requested and was granted leave to move for an *Atkins* hearing prior to the entry of a Scheduling Order. *See* Docs. # 20, 21. If the court subsequently finds that the state court's adjudication of Beckworth's *Atkins* claim was an unreasonable application of clearly established federal law or

---

[4]   Petitioner acknowledges that this claim was decided on the merits in the state courts and is therefore subject to review under § 2254(d). *See* Pet. (Doc. 1) ¶¶ 54, 56-57, 69.

that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, Beckworth is free to renew his motion for an A*tkins* hearing.

## B.   Motion for discovery of *Brady* evidence

Claiming that the prosecution violated the well-settled rule of *Brady v. Maryland*, 373 U. S. 83, 87 (1963)[5], by failing to disclose to him prior to trial, evidence favorable to the defense that is material either to guilt or punishment, Beckworth asserts a *Brady* claim in his habeas petition and has moved for the discovery of the subject *Brady* evidence.   Specifically, Beckworth requests

---

[5]   In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." As the Supreme Court later clarified, the prosecutor has a duty to disclose favorable evidence even where there is no request from the defendant. *See United States v. Agurs*, 427 U. S. 97, 107 (1976). This duty also applies to impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Further, the rule in *Brady* encompasses evidence known only to police investigators and not personally known by the prosecutor. *Strickler v. Greene*, 527 U.S. at 280; *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). "[T]he individual prosecutor has a duty to learn of any favorable evidence *known to the others acting on the government's behalf* in this case, including the police." *Strickler v. Greene*, 527 U.S. at 281 (emphasis added); *Kyles v. Whitley*, 514 U. S. at 437.

Under clearly established Supreme Court precedent, there are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," *i.e.*, prejudice must have ensued from its non-disclosure. *Banks v. Dretke*, 540 U. S. 668, 691 (2004); *Strickler v. Greene*, 527 U. S. at 281-82. Evidence is "material" under *Brady* where there exists a "reasonable probability" that had the evidence been disclosed the result at trial would have been different. *Banks v. Dretke*, 540 U. S. at 698-99.

discovery of all records related to Timothy Byrd's statements to the Houston County Sheriff's Office, Investigator Eric Sewell, and the District Attorney's Office, contained in the Houston County Sheriff's Office and the District Attorney's files that Beckworth's co-defendant, James Walker, confessed to Byrd that he was the triggerman who shot Ms. Thewatt.  (Doc. # 23.)

In the present case, Beckworth's *Brady* claim stems from the prosecution's failure to disclose the confession of his co-defendant, James Walker, that he was the triggerman.  As set out at length in Beckworth's Rule 32 petition and the present petition, Beckworth states that Walker confessed to his cellmate, Timothy Byrd, that he shot and killed Ms. Thweatt.  (Doc. # 23-1 at 1045).  This conversation occurred around June 2000, while Walker and Byrd were inmates at the Houston County Jail. (Doc. # 23-1 at 1043.)  Byrd informed Houston County Sherriff's Office Investigator Eric Sewell about Walker's confession in April 2001 (Doc. # 23-1 at 1047), before testifying about Walker's confession to him at Walker's trial in August 2003.  (Doc. # 23-2 at 1488, 1492.)

Beckworth points out that Byrd informed Investigator Eric Sewell of Walker's confession in April 2001, nearly one and one-half years prior to Beckworth's trial in September 2002.  Regardless, during this time, the prosecution failed to provide Beckworth with any evidence regarding Walker's confession to Byrd that he was the

triggerman.  Beckworth notes that despite knowing of Walker's confession to Byrd for over a year prior to Beckworth's trial, the prosecutor told Beckworth's jury that he had no evidence regarding the identity of the shooter.[6]  Yet, at Walker's subsequent capital murder trial, this same prosecutor called Byrd as a witness, eliciting testimony regarding Walker's confession to him that he was the triggerman. (Doc. # 23-1 at 1045.)  The trial judge explicitly relied on this evidence in sentencing Walker to death.  (Doc. #23-2 at 1492.)

The foregoing circumstances are nearly identical to the facts in *Brady*.  Like *Brady*, the prosecution suppressed a statement in which the co-defendant admitted that he was the triggerman in a capital murder.  Additionally, like *Brady*, the co-defendant was tried at a separate and subsequent trial.  Unlike the petitioner in *Brady*, who "took the stand and admitted his participation in the crime[,]" 378 U. S. at 84, Beckworth maintained that he did not participate in the robbery, and there was no physical evidence linking Beckworth to the scene of the crime.

Beckworth contends that the prosecution capitalized on its *Brady* violation in that it was able to portray Beckworth as more culpable than Walker.  For example, Angela Russell, Walker's sister, testified on behalf of the prosecution, stating that Beckworth was physically stronger than Walker was and was the leader in their

---

[6] [Vol. 10, Tab #R-13, at TR.254].

relationship.[7]   Then, during closing argument, the prosecutor reiterated his earlier statement to the jury that he had no evidence as to who "pulled the trigger [,]"[8] before characterizing Beckworth as an older, dominant figure:   "Beckworth was 35, 33 years old. Walker was 20."[9]

## 1.   Beckworth's *Brady* claim in state court

In June 2007, Beckworth presented his *Brady* claim and others in a 79-page Rule 32 petition, and he requested an evidentiary hearing.  This petition, in relevant part as to the *Brady* claim, states:

> 226.  In *Brady*, the prosecution withheld evidence that Brady's conspirator had admitted to the actual homicide in an extrajudicial statement.  378 U. S. at 84. At Mr. Beckworth's trial, also for burglary-murder, the prosecution withheld a statement made by co-defendant James Walker to Tim Byrd, a cell mate, that he had committed the murder.

> 227.   Byrd testified at Walker's trial that he was Walker's cell mate in the Houston County Jail after Walker had been arrested and charged with murder.  Byrd and Walker had a conversation around June of 2000 in which Walker said that he pulled the trigger. Walker said that it was getting to him.  He was having bad dreams and crying.  Walker also told Byrd that Mr. Beckworth went with him to commit the burglary.  Byrd made a statement to Investigator Eric Sewell in June 2000 after this conversation.

---

[7]  [Vol. 12, at TR. 600-01].

[8]  [Vol. 12, at Tab #R-17, at TR. 699].

[9]  *Id.*

228.    The prosecution found the statement highly probative. The same District Attorney who withheld the evidence during Mr. Beckworth's trial called Mr. Byrd to testify at the later trial of James Walker.    As in *Brady*, withholding this evidence was "material . . . to punishment" and the only just remedy is a new sentencing.  378 U. S. 87; *Ex parte Monk*, 557 So. 2d 832,837 (Ala. 1989) ("This statutory mandate that a defendant shall be allowed to offer evidence of mitigating circumstances is another reason why broad discovery must be allowed").

229.  In Mr. Beckworth's case, Byrd's testimony is also material to guilt. Unlike Brady, who "took the stand and admitted his participation in the crime" (378. U. S. at 84), Mr. Beckworth maintained that he was not a participant in the robbery.  There was no physical evidence linking Mr. Beckworth to the scene of the crime.  Mr. Beckworth's incriminating statement was susceptible to challenge as involuntary and unreliable.  It was obtained by a police officer who was primed by Walker to obtain an admission of guilt from Mr. Beckworth. The suppression of evidence that Walker, when plagued by guilt, admitted that he had done the killing himself demands a new trial to determine Mr. Beckworth's guilt or innocence.

.  .  .

233.   The State withheld information material both to the guilt or innocence and to the punishment of Mr. Beckworth in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, the Alabama Constitution, and Alabama State law. The remedy demanded by law is a new trial.

[Vol. 19, Tab #R-51, at C. 70-73].

On August 13, 2007, the State answered the petition,[10] and on August 16, 2007, the trial court, in a two-page order, summarily dismissed Beckworth's Rule 32 petition[11] and made no mention of the *Brady* claim.  Beckworth advises that at the time the trial court dismissed his petition, his counsel was preparing an amended petition that would have included new claims and bolstered the initial claims raised.  On September 6, 2007, Beckworth moved the trial court for reconsideration of the summary dismissal and moved for leave to file an amended petition and an order granting his request for an evidentiary hearing, as well as discovery.[12]  On September 24, 2007, the trial court granted Beckworth leave to amend the Rule 32 petition.[13]

On May 1, 2009, the ACCA affirmed the summary dismissal of Beckworth's petition, reasoning that because the trial court's order granting leave to amend was entered more than thirty days after entry of final judgment, the trial court was unauthorized to permit Beckworth to amend his petition.  *See Beckworth v. State*, 2009 WL 1164994, at *7 (Ala. Crim. App. May 1, 2009).  On July 3, 2013, the Alabama Supreme Court reversed with respect to the *Brady* claim, concluding that

---

[10]  [Vol. 19, Tab #R-52, at C. 98].

[11]  [Vol. 19, Tab #R-53, at C. 157-58].
[12]  [Vol. 19, at C. 159].

[13]  [Vol. 19, at C 192].

the procedural bar on which the ACCA relied was inapplicable.  *Ex parte Beckworth*, 2013 WL 3336983, at *5 (Ala. July 3, 2013).

On remand, the ACCA again affirmed the dismissal of the *Brady* claim, holding that Beckworth failed initially to sufficiently plead his *Brady* claim.  The ACCA explained:

> Thus, Beckworth was required to allege in the petition sufficient facts to establish that evidence of Walker's statement to his cell mate was not known to the defense, and he failed to do so. Thus, having failed to allege the first element of a Brady claim, Beckworth failed to meet the specificity requirement of Rule 32.6(b), Ala. R. Crim. P., and the circuit court was correct to summarily dismiss that claim.  See Rule 32.7(d), Ala. R. Crim. P.
>
> Therefore, we again conclude that summary dismissal of this Brady claim -- that the State withheld evidence of Walker's statement to his cell mate -- was proper.  The circuit court's summary dismissal of this claim is affirmed.

*Beckworth v. State*, CR-07-0051 (Ala. Crim. App. Nov. 14, 2014); [Vol. 25, Tab #R-79]; *see also Borden v. Allen*, 646 F. 3d 785, 813 (11th Cir. 2011) (noting that adjudications under Rule 32.6(b) of the Alabama Rules of Criminal Procedure are "categorically 'on the merits'").

On April 17, 2015, the ACCA denied rehearing.  The Alabama Supreme Court denied certiorari on September 18, 2015,[14] and the United States Supreme Court denied certiorari on April 18, 2016.[15]

## 2.     Beckworth's *Brady* claim in federal court

In his habeas petition, Beckworth reasserts the *Brady* claim he raised in his Rule 32 petition (Doc. # 1 at 43-44), and he seeks to discover the *Brady* evidence that the prosecution failed to disclose to him prior to trial.  (Doc. # 23.)

In *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), the Supreme Court recognized that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course."  Historically, a habeas petitioner's entitlement to discovery was governed by Rule 6 of the Rules Governing Section 2254 Cases In The United States Courts.  However, the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996, and case law emanating therefrom has affected discovery in habeas cases.  In particular, the Supreme Court's decision in *Cullen v. Pinholster*, 563 U. S. 170 (2011), is important in clarifying the conditions under which discovery may be granted in federal habeas corpus proceedings.

---

[14]   [Vol. 25, Tab #R-83].

[15]   [Vol. 25, Tab #R-87].

Briefly, in *Pinholster*, the Court considered the interrelationship between 28 U.S.C. §§ 2254(d)(1) and 2254(e)(2) of the AEDPA and held that under § 2254(d)(1), a federal habeas court's review is limited to the record that was before the state court that adjudicated the claim on the merits, and that any evidence later introduced in federal court is irrelevant to § 2254(d)(1) review.  563 U.S. at 185.

The Supreme Court clarified that a federal district court should consider whether to grant a substantive evidentiary hearing pursuant to § 2254(e)(2) only if the state court did not decide the issue under review on the merits, noting as follows:

> . . . not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims 'adjudicated on the merits in State court proceedings.' At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court.

*Id.* at 186.  The Supreme Court expressly stated that a decision on the merits need not be comprehensive.  Even if the claim was summarily denied on the merits without discussion or analysis, as was the case with Pinholster's claim, the federal court's review is still limited to the state court record.  *Id.* at 187 ("Section 2254(d) applies even where there has been a summary denial.").

*Pinholster* provides an additional bar to the consideration of "new" evidence on federal habeas review under § 2254(d). Thus, in considering whether to allow discovery on a federal habeas claim, the district court must first determine whether

the state court adjudicated the claim on the merits.  If so, then "review under §
2254(d)(1) is limited to the record that was before the state court." *Sheppard v.
Bagley,* 657 F.3d 338, 349 (6th Cir. 2011).

The trial court's two-page order denying Beckworth's Rule 32 petition
entered three days after the State filed its answer to the petition was a summary
denial.  Regardless, as established in *Pinholster*, "[s]ection 2254(d) applies even
where there has been a summary denial.  *See [Harrington v.] Richter*, 562 U. S.[
], at ___ , 131 S. Ct. [770], at 786." *Id.* at 1402.  Likewise, the ACCA's decision
affirming the lower court's summary denial pursuant to Rule 32.6(b) of the Alabama
Rules of Criminal Procedure must be treated as a merits adjudication for purposes
of § 2254(d).  *See Borden v. Allen*, 646 F.3d 785, 813 (11th Cir. 2011) (remarking
that adjudications under Rule 32.6(b) of the Alabama Rules of Criminal Procedure
are "categorically 'on the merits.'").[16]

Because the summary denial of Beckworth's Rule 32 is deemed to be a
decision on the merits, his motion for the discovery of *Brady* evidence is  premature
because this court has made no determination that the state court's resolution of the
*Brady* claim raised in the Rule 32 petition was either "contrary to, or involved an
unreasonable application of clearly established Federal law, as determined by the

---

[16]   Petitioner acknowledges that his *Brady* claim was denied on the merits by the state courts and
is therefore subject to review under ¶ 2254(d).  *See* Pet. (Doc. 1) ¶¶ 129, 132.

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(2).  If the court subsequently makes that

determination, Beckworth is free to renew his motion for discovery of *Brady*

evidence.

## II. CONCLUSION

For all of the reasons stated above, it is ORDERED as follows:

1.   Beckworth's Motion for an *Atkins* Hearing (Doc. # 22) is DENIED

WITHOUT PREJUDICE.

2.   Beckworth's Motion for Discovery of *Brady* Evidence (Doc. # 23) is

DENIED WITHOUT PREJUDICE.

DONE this 25th day of January, 2017.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE